IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 03-CR-30122-MJR |
| | ) | |
| DENNIS SONNENSCHEIN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

The undersigned District Judge has held dozens of hearings and entered over 50 Orders in the above-captioned case, a striking figure given the fact that Defendant Sonnenschein pled guilty immediately upon being charged in June 2003. The majority of the Orders related to the monetary penalties (restitution and fine) imposed via this Court's sentence and Defendant's endeavors to satisfy those obligations.

The circuitous odyssey of this case has included many strange ports of call and curious sights – Brooklyn (Illinois) strip clubs, Denver (Colorado) storage lockers, divorce court, bankruptcy court, bronze sconces, silver bowls, Paso Fino horses and the in-court appearance of the hero of Super Bowl XXXIV. The journey nears its final destination as the undersigned Judge resolves the last question before him – how to distribute **$125,467.39** being held by the Clerk of Court. Resolution begins with brief overview of pertinent procedural history and key facts.

When his criminal troubles began, Defendant Dennis Sonnenschein was married to Linda Sonnenschein. The marriage did not survive these criminal proceedings. From the get-go, plea discussions between Dennis and the Government focused on an arrangement pursuant to which Linda would escape prosecution but Dennis would agree to serve prison time, surrender titles to several parcels of real property and pay hefty amounts in fine and restitution.

On June 9, 2003, Dennis pled guilty here to misprision of a felony. A month later, the District Court of Jefferson County, Colorado (where the Sonnenschein's divorce proceeding was pending) adopted a Special Master's Order, part of which provided that the first $1.5 million realized from the Sonnenschein's marital estate be deposited in the trust account of Dennis' criminal defense counsel and be used to satisfy the terms of the plea agreement.

On October 17, 2003, the undersigned District Judge sentenced Dennis. The sentence included $1,000,000 in restitution and a $250,000 fine. Judgment was entered three days later. During and after serving his term of imprisonment in this case, Dennis found himself drawn into various proceedings commenced by Linda in Colorado court.

In June 2005, Dennis discovered that Linda had stashed marital belongings in storage facilities in Denver. He alerted the United States Attorney for the Southern District of Illinois, who obtained a writ of execution from this Court, had the U.S. Marshal seize the property in question and moved to sell the property at auction. (The latter motion is referred to herein as the July 2005 Motion to Approve Sale.)

In October 2005, Linda filed for Chapter 7 bankruptcy protection in Colorado. Ultimately, in March 2008, the United States Bankruptcy Court for the District of Colorado approved a settlement agreement between Dennis and the Trustee in Bankruptcy for Linda. Under that agreement, the Trustee abandoned $125,000 derived from the sale of marital assets ("the Proceeds") in exchange for Dennis withdrawing a $246,000 claim against Linda's bankruptcy estate. The agreement required the Trustee to transfer the Proceeds to the registry of this Court.

In April 2008, the undersigned Judge granted a motion to deposit the Proceeds in this Court's registry. Three conflicting claims have been made for disposition of the Proceeds. Dennis maintains the Proceeds should be applied to his outstanding fine (Doc. 140). The United States contends the Proceeds must be applied against Dennis' tax liabilities (Doc. 141).[1] And a law firm who represented Linda in Colorado (McGuane & Hogan, LLP) wants the Proceeds to partially satisfy its attorneys' fee lien (Doc. 142).

The claimants have extensively briefed the issues via motions, supporting briefs, responses and replies. The Court heard oral arguments on April 3, 2009. Having carefully reviewed the thorough and ample record before it, the Court concludes that

---

[1] To clarify, it is the Internal Revenue Service (IRS) who insists it is entitled to apply the Proceeds to unpaid taxes. The IRS made a late appearance in this case (roughly 5 years into the 6-year old case), demanding the Proceeds long after the local U.S. Attorneys' Office had worked at length with Defendant to locate, liquidate and apply funds toward the restitution and fine obligations imposed by the undersigned Judge.

the Proceeds should be applied to satisfy Defendant's obligations in this criminal proceeding.

With respect for the fine work apparently done by McGuane & Hogan, LLP (McGuane) in the Colorado proceedings, its claim to the Proceeds fails for one simple reason. Neither the Proceeds nor the furniture and fixtures from which the Proceeds were derived ever were awarded to Linda in the Colorado divorce or bankruptcy case.[2] Because Linda never obtained the assets in question by judgment or settlement, her former counsel cannot assert a lien on the Proceeds from those assets.[3] Which leaves the Court to determine which of two federal coffers the Proceeds belong in, *i.e.*, whether the Proceeds pay down Sonnenschein's fine owed to the United States in this criminal action or go to the United States to be paid toward his IRS tax liabilities.

Two facts bear note at this juncture. First, there would be no Proceeds, were if not for Dennis Sonnenschein's considerable effort and expense in tracking down the property hidden by Linda and advising the Government of its existence. Second,

---

[2] To the contrary, the orders entered in the divorce case specifically provided that the first $1,500,000 realized from the sale of the Sonnenscheins' marital assets would be used to satisfy Dennis' obligations in this criminal case.

[3] Counsel also persuasively argued two other bases for denying McGuane's claim: (a) McGuane is *estopped* from asserting its lien via the firm's role in drafting and negotiating the agreements providing that the first $1.5 million from the marital estate would go to satisfy Dennis' obligations in this criminal case; and (b) McGuane's lien cannot trump the federal tax lien, because (inter alia) it has not been executed on and is *inchoate*.

over three years ago, this Court undertook a formal process to identify any potential claimants to the property that became the Proceeds, and the IRS asserted no claim.

In the July 2005 Motion to Approve Sale, the Government acknowledged that *Linda* claimed an interest in the property, argued that any interest Linda had was inferior to the United States' interest, and assured the undersigned Judge: "There are **no other liens** against the property known to the United States" (Doc. 50; emph. added).

On July 25, 2005, the undersigned Judge ordered any person claiming any interest in the property to file a claim with this Court by a specified date (see Doc. 51). Linda filed a claim. Another individual from Colorado (Kevin Jacobson) filed a claim. The IRS never filed a claim. Hearings were held here. An Order was entered allowing Linda and Jacobson to keep certain property but authorizing the U.S. Marshal to sell the lion's share of the seized assets, with the understanding and expectation (of the Government, of Dennis Sonnenschein, and of the Court) that the resulting money would be put toward Dennis' obligations in this criminal case.

Linda's bankruptcy filing (and an appeal taken in that case) stalled the sale of the seized property and disposition of the money obtained from the sale. Only after the Proceeds were deposited here in April 2008 did the IRS assert a claim in this Court.

On May 29, 2008, attorney Karen Pound entered an appearance on behalf of the IRS in this closed criminal case. The undersigned Judge agrees with many of the points ably argued by Ms. Pound at the April 3, 2009 hearing. Under 26 U.S.C. § 6321 and § 6322, tax liens arose in favor of the IRS and against both Dennis and Linda. Such

liens are encompassing in scope, attaching to all property and rights of the taxpayer, plus any property subsequently acquired by the taxpayer while the lien is in force.

The Court, however, finds flaws in several points urged by the IRS. The Court is not convinced that the "first in time" rule, a federal common law principle for resolving conflicts between a federal tax lien and a *state* lien, applies with equal force to competing *federal* liens.

Nor is it clear that, even *if* applied, the first in time rule mandates the result urged by the IRS as to all of the tax liens here. By way of example, the IRS lien for Dennis' 2001 taxes apparently was *not* "first in time," because it was not recorded in Colorado *prior* to the recording of the criminal restitution lien from this Court's judgment in St. Louis County, Missouri (November 17, 2003) or Jefferson County, Colorado (on March 22, 2004).[4]

Furthermore, the IRS has not adequately explained why 26 U.S.C. § 6323(a) has no application. Section 6323(a) provides that a lien arising under § 6321 "shall not be valid" against any judgment lien creditor until notice has been filed by the Secretary. Here, the IRS did not file its Notice of Federal Tax Lien (NFTL) with the Clerk and

---

[4] The IRS assessed taxes against Dennis in November 1999 and August 2000 (for tax years ending 12/31/98 and 12/31/99). Notice of the tax lien for this liability was filed November 5, 2003 in Colorado. The IRS made additional assessments against Dennis in February 2005 and April 2006 (for tax years ending 12/31/01 and 12/31/02). On May 16, 2005, the IRS filed a notice of tax lien as to the 2001 tax year (see Doc. 141, pp. 1-2). Assessments also were made against Linda Sonnenschein, giving rise to other federal tax liens (see *id.,* p. 3*)*.

Recorder of Jefferson County, Colorado until November 5, 2003.

That date was well <u>after</u> the July 14, 2003 Order of the Jefferson County, Colorado court designating the first $1.5 million of the Sonnenschein's marital property for satisfaction of the criminal obligations imposed by this Court. Stated another way, because the IRS did not file the NFTL until November 2003, arguably the tax lien is "not valid" against the encumbrance created by the divorce court's July 14, 2003 judgment.

More importantly, the IRS' position ignores the larger equitable principles at work in the case sub judice. And that is the linchpin of this Court's ruling.

One arm of the United States Government (the United States Attorney's Office) worked with Defendant Sonnenschein, made representations to the undersigned Judge, and proceeded for years in this Court as if the Proceeds in question would go to satisfy the obligations this Court imposed on Dennis Sonnenschein at sentencing.

Another arm of the same sovereign (the IRS) could have made a claim to the Proceeds in the Summer of 2005 when this Court held hearings and issued Orders (relying on the prosecution's representation that "There are no other liens against the property known to the United States"). The IRS cannot paint itself as an entirely separate entity with no lines of communication to the U.S. Attorney's Office and cannot rely on the "it's a big world and we're busy" argument to justify its failure to assert its lien, make a claim, or otherwise speak up at that time.

In January 2005, this Court even *entered a judgment* in a separate civil proceeding (Doc. 17 in Case No. 04-0493) declaring that Linda had agreed to the first

$1.5 million in marital property being used for this purpose, and the Government had a lien on that property "after October 20, 2003, pursuant to 18 U.S.C. § 3613." That judgment was served on the Government and drew no motion to reconsider or motion to amend/alter judgment.

The issue before the undersigned Judge is narrow. This is not a broad inquiry into the scope of the IRS' tax liens against the Sonnenscheins. Rather, the question is whether *in this case* the IRS has a right to share in the specific Proceeds from the sale of certain personal property – funds sitting in this Court's registry against which the IRS never filed a timely claim in this Court and funds which the Government itself assumed and intended would be used to pay off Defendant's fine. The IRS has cited no case or regulation mandating the result it seeks herein, and the undersigned Judge finds that principles of fairness and equity demand the application of these Proceeds to the criminal obligations resulting from Dennis Sonnenschein's sentence.

Accordingly, the Court DENIES Docs. 141 and 142 and **GRANTS** Doc. 140. The Clerk of Court **SHALL APPLY** toward Defendant Sonnenschein's fine obligation the Proceeds being held in the registry of this Court.

IT IS SO ORDERED.

DATED this 4th day of May 2009.

s/ Michael J. Reagan
MICHAEL J. REAGAN
United States District Court